IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXANDER STEIN<br><br>Plaintiff,<br><br>vs<br><br>DALLAS COUNTY<br><br>and<br><br>JOHN WILEY PRICE<br><br>and<br><br>CLAY JENKINS<br><br>and<br><br>JOHN DOES #1 - #5<br><br>Defendants. | Civ. Action No. 3:22-cv-1255<br><br>**COMPLAINT** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff ALEXANDER STEIN (hereinafter, "Plaintiff" or "Stein" or "Prime Time #99"), by and through his undersigned counsel, Jonathan Stuart Gross and John Nation, respectfully alleges as follows:

**INTRODUCTION AND STATEMENT OF THE CASE**

1. On March 17, 2022, Alexander Stein, the Plaintiff in this action, attempted to exercise his First Amendment right of free speech by addressing the Dallas County Commissioners' Court for three minutes during the Public Comment session of a Commissioners'

Court meeting, as is provided by the Dallas County Code.

2. Just seconds into his three-minute address, one of the Commissioners cut Stein off and ordered the fire marshals to forcibly remove Stein from building, in violation of the United States' Constitution, the Texas Open Meetings Act, and the Dallas County Code.

3. Stein suffered economic and non-economic damages as a result, and further, the incident will have a chilling effect on free speech because the County Commissioners and the fire marshals, through their unlawful conduct, represented to the public that it is illegal to publicly criticize elected officials.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3), and 42 U.S.C. § 1983, which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges and immunities secured by the laws and Constitution of the United States. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred, and continue to occur in this District.

## PARTIES

6. Plaintiff ALEXANDER STEIN is an adult citizen of the State of Texas.

7. Defendant DALLAS COUNTY ("County") is a corporation authorized to do business in the state of Texas and having its principal place of business there.

8. Defendant JOHN WILEY PRICE ("Price") is an adult citizen of the State of Texas and at all times relevant to this complaint served as a commissioner on the Commissioners' Court.

9. Defendant CLAY JENKINS ("Jenkins") is an adult citizen of the State of Texas and at all times relevant to this complaint served as County Judge and presiding officer of the Commissioners' Court.

10. Defendants JOHN DOES #1 - #5 are fire marshals who provided security at the Commissioners' Court at all times relevant to this complaint.

## FACTS

### Commissioner Clay Jenkins and his "dubious" history

11. Dallas County is governed by the Dallas County Commissioners' Court. (the "Commissioners' Court").

12. The Commissioners' Court consists of the County Judge (the presiding officer of the court), who is elected county-wide, and four commissioners who are elected by the voters in each of Dallas County's four precincts.

13. The Commissioners' Court is the policy-making body for the county; in addition, the county judge is the senior executive and administrative position in the county. The Commissioners' Court sets the county tax rate, adopts the budget, appoints boards and commissions, approves grants and personnel actions, and oversees the administration of county government.

14. Clay Jenkins is the County Judge and as such, he is the presiding Officer of the Commissioners' Court.

15. In September of 2014, when Jenkins was in his first term as County Judge, D Magazine published an exposé about him (the "Exposé"). *See* Peter Simek, *Who Is Clay Jenkins?*, D Magazine www.dmagazine.com//publications/d-magazine/2014/october/who-is-dallas-county-

judge-clay-jenkins.

16.     According to the Exposé, while a student at Baylor University, Jenkins "distinguish himself dubiously."

17.     According to the Exposé, Jenkins was arrested twice, once for reckless driving after he led Baylor security and Waco police on a car chase that he'd planned, and a second time for criminal trespass in a women's dorm during a "panty raid."

18.     According to Wikipedia, a panty raid is a college prank in which "large groups of male students attempted to invade the living quarters of female students and steal their panties (undergarments) as the trophies of a successful raid." *See Panty raid*, Wikipedia (June 5, 2005), en.wikipedia.org/wiki/Pantyraid.

19.     According to the Exposé, he was never arrested for his role as the infamous Baylor Pie Man, "a hit man for a student-organized ring that offered to throw pies in people's faces—professors, ex-boyfriends—for a fee."

20.     According to the Exposé, the police's failure to arrest Jenkins for these acts was "strange."

21.     The Exposé did not include detailed accounts of these incidents, nor did it direct the reader to a court docket or other source for further research.

22.     The Exposé did not mention whether Jenkins was ultimately convicted for these arrests, or whether he was charged with a misdemeanor or a felony.

23.     This fact is significant as, pursuant to Tex. Elec. Code § 141.001(a), "to be eligible to be a candidate for, or elected or appointed to, a public elective office in this state, a person must…not have been finally convicted of a felony from which they have not been pardoned or

otherwise released from the resulting disabilities."

## Alex Stein – Prime Time #99

24. Tucker Carlson, the host of the most popular evening cable news show, reported that the Plaintiff in this case, Alex Stein, has figured out "one of the most effective ways to change the way the people in power behave[.]" *Alex Stein on Tucker Carlson Tonight 3/25/2022*, YouTube (Mar. 25, 2022), https://www.youtube.com/watch?v=HD_GvXcympk.

25. Plaintiff observed that when citizens attended public meetings to express their grievances during the time reserved for public comment, the politicians mostly ignored them.

26. Plaintiff observed citizens bare their souls before their elected officials pleading for assistance with serious problems while the politicians acted "like nonplayable characters in the video game of life."

27. Plaintiff also observed that the government, mainstream media, and big technology corporations collude to propagate a coordinated agenda and to suppress any voices that oppose their agenda or criticize the ruling class.

28. Specifically, during the COVID-19 pandemic, the government mandated lockdowns that destroyed people's livelihoods, imposed mask mandates that harmed the emotional and physical health of children, blocked pharmacists from prescribing known treatments like ivermectin, and imposed vaccine mandates that deprive people of bodily autonomy.

29. Government and big tech coordinated to suppress any opposition to these controversial policies. *See, e.g.,* Steven Nelson, *White House flagging posts for Facebook to censor over COVID misinformation*, (July 15, 2021), nypost.com/2021/07/15/white-house-flagging-posts-for-facebook-to-censor-due-to-covid-19-misinformation/.

30. In response to these abusive government policies and actions, Plaintiff attended public meetings of local government and earnestly spoke in opposition.

31. Plaintiff quickly realized that local politicians dismissed him as an idiot conspiracy theorist and ignored him.

32. Realizing that his serious approach was not working and that his voice was not being heard, Plaintiff adopted a new approach.

33. To get the attention of politicians, Plaintiff adopted the alter ego "Prime Time #99."

34. Rather than citizen Alex Stein speak at a public meeting and argue for his policy positions, Prime Time #99 would attend public meetings and "culture jam" or mirror back to the politicians their policies and the policies of the main stream media, thereby exposing the absurdity of the policies to the politicians and to the public.

35. For example, on or around January 12, 2022, Prime Time #99 performed "The Vaccine Rap" at Dallas City Hall showing the absurdity of vaccine mandates. The video has been viewed by millions of people. Alex Stein, *The Vaccine Rap at Dallas City Hall by Prime Time #99 Alex Stein*, YouTube (Jan. 12, 2022), https://www.youtube.com/watch?v=bwaMr24Ojc8.

36. On or about March 21, 2022, Prime Time #99, performed a skit at a meeting of the Richardson City Council meeting parodying Congress' and the mainstream media's reckless and obsessive push to enter a global nuclear conflict with Russia. The video has been viewed by millions of people. *Recruiting the Richardson City Council to sign up for World War 3*, YouTube (Mar. 21, 2022), https://www.youtube.com/watch?v=-9mR36gJB6I.

37. On or about March 28, 2022, Prime Time #99, addressed the Plano City Council as Alexandria Stein dressed in a women's swim suit to expose the absurdity of the mainstream

media's support of a man who declared himself a woman and then suddenly went from being the 457th ranked male swimmer to the best female swimmer in the country. The video has been viewed by millions of people. *Plano City Council Refuses to Stand Up for Trans Rights*, YouTube (Mar. 28, 2022), https://www.youtube.com/watch?v=Y_217RLXzU.

38. As a result of Plaintiff's newly acquired fame, Plaintiff is now frequently invited to speak on television and radio shows, podcasts, livestreams, and at in person events.

39. Plaintiff has also been paid to contribute content to media companies, including Blaze TV.

40. Plaintiff has an amplified voice to challenge and criticize elected officials and to expose corruption.

41. Plaintiff continues to attend public meetings to hold elected officials accountable to their constituents and to bring attention to matters of public interest.

42. Many public officials are familiar with Plaintiff's work.

### The May 17, 2022 Meeting of the Commissioners' Court

43. At the May 17, 2022 meeting of the Commissioners' Court (the "Meeting"), Defendant John Wiley Price interrupted Plaintiff in the middle of Plaintiff's speech and ordered security to eject Plaintiff from the building. *See* Youtube. DCVideo, *Commissioners Court - May 17  2022 (Part 1)*, YouTube (May 17, 2022), https://www.youtube.com/watch?v=zYKUrYXoSSU.

44. The Meeting was held in the courtroom of the book depository from which Lee Harvey Oswald assassinated President John F. Kennedy (the "Courtroom").

45. Defendant Jenkins presided over the Meeting.

46. Dallas County fire marshals ("marshals") served as security guards during the meeting and stationed themselves throughout the Courtroom where the Meeting was held.

47. The agenda for the Meeting was published in advance of the Meeting and included a session for "Public Comment."

48. In advance of the Meeting, Plaintiff submitted his name to address the Commissioners' Court during the scheduled time allocated for public comment.

49. Upon information and belief, the Defendants were aware of Plaintiff and his work before the Meeting.

50. Upon information and belief, in advance of the Meeting, Defendant John Wiley Price discussed Plaintiff with law enforcement officials who provided security at the Meeting.

51. In addition to Plaintiff, two other citizens made public comments at the Meeting.

52. The other two speakers were given a full three minutes to address the Commissioners' Court.

53. The Meeting was filmed by multiple cameras from a variety of angles; one camera provides a frontal view of the Commissioners, and only the back of a speaker addressing the Commissioners; another camera provides a closeup frontal view of a speaker addressing the Commissioners; a third camera is positioned at the far side of the room and provides an obscured and distant view of a speaker addressing the Commissioners.

54. Upon information and belief, the Commissioners control which camera angle is used, and are able to provide the preferred closeup frontal view to speakers that they favor, while switching to the distant obscured view for speakers like Plaintiff that are disfavored.

55. When Plaintiff addressed the Commissioners, he was not given the frontal view as

other speakers throughout the meeting were provided, rather, he was given the distant obscure view.

56. When Plaintiff's name was called and he approached the lectern, two marshals, John Does #1 and #2 can be seen on camera taking a position side by side behind Plaintiff; John Doe #1 came forward from his prior position at the entrance of the room and John Doe #2 came over from his position at the far corner of the room.

57. These marshals were not standing in these positions behind any other speaker during the meeting.

58. Plaintiff provided a handout of the Exposé to be distributed to the Commissioners.

59. Defendant Jenkins took his personal phone and directed it at Plaintiff as if he was using his personal phone to film Plaintiff.

60. As is the procedure for all public comment, the Commissioners' Court displayed a digital countdown set to three minutes – the time allotted by rule to members of the public who address the Commissioners' Court during the public comment session.

61. Plaintiff introduced himself by stating: "How are you doing judge? My name is Alex Stein, they call me Prime Time #99 Alex Stein, and I am a Blaze TV Contributor. The handout I have here today (I see you got me filming) this is a D magazine article about Clay Jenkins and it says:"

62. Plaintiff read the following portion of the Exposé before he was cut off:

In college at Baylor, Jenkins continued to distinguish himself dubiously. He was arrested twice, once for reckless driving after he led Baylor security and Waco police on a car chase he'd planned and a second time for criminal trespassing in a women's dorm during a panty raid. Strangely enough, he was never arrested for his role as the famous Baylor Pie Man, a hit man for a student-organized ring that offered to throw pies in people's faces—professors, ex-boyfriends—for a fee.

63. Plaintiff was suddenly interrupted by Defendant Price who banged the gavel several times.

64. Plaintiff respectfully stopped reading and acknowledged Defendant Price.

65. Defendant Price said to Plaintiff, "You're not allowed to admonish members of this court."

66. Defendant Price misstated the law.

67. Texas Gov't Code Sec. 551.007(e) states in pertinent part, "A governmental body may not prohibit public criticism of the governmental body, including criticism of any act, omission, policy, procedure, program, or service."

68. As Defendant Price said these words, John Doe #1 and #2, stationed behind Plaintiff, can be seen slowly advancing towards Plaintiff, and John Doe #3, can be seen moving closer to Plaintiff from Plaintiff's side.

69. No order had been given to the marshals by Defendant Jenkins or by any of the Commissioners.

70. Plaintiff did not make any movements or statements or do anything that would indicate to the marshals that he was a threat.

71. Also, as Defendant Price said these words, the digital countdown, which had only ticked off 36 seconds, was stopped.

72. No order had been given to stop the digital countdown.

73. In response to Defendant Price's interruption, Plaintiff respectfully replied to Defendant Price, "Yeah, I'm just asking, I would like to get some clarification on, here it says…"

74. Once again, Defendant Price interrupted Plaintiff by banging his gavel several

times, this time more rapidly and forcefully than the first time he interrupted Plaintiff.

75. Defendant Price raised his voice and said, "Excuse me, excuse me, excuse me! You are not allowed to attack members of this court."

76. As he said this, Defendant Price gestured with his arm as if signaling to John Does #1, #2, and #3, and all three marshals converged on Plaintiff and surrounded him from all sides; John Doe #3 grabbed the microphone away from Plaintiff.

77. Plaintiff tried to explain that he was not attacking the Commissioners but simply asking for clarification, but he was once again interrupted by Defendant Price.

78. Defendant Price said, "Yes you are [attacking the Commissioners]. No, you're not [asking for clarification], what are you, what is your question? What is your question? Oh well ok well you're, you're, you're attacking a member of this court. You're finished. You're finished. You're finished. Marshal, move him out. You're out. You're finished. You're finished. You're finished."

79. John Does #1, #2, and #3 all grabbed Plaintiff by his arms, applied pressure to Plaintiff's arms, shoulders, and back, and forcibly pulled him from the lectern.

80. Plaintiff was never asked to step down from the lectern, not by Defendant Jenkins, Defendant Price, by any of the Commissioners, or by the marshals.

81. Plaintiff was never advised by the Commissioners' Court that he was in violation of any law, regulation or rule, nor was he warned that he was acting in a way that could get him ejected.

82. When the marshals dragged Plaintiff away from the lectern, Plaintiff did not resist.

83. Plaintiff turned around and headed towards the exit.

84. Plaintiff repeatedly told the marshals that he would leave on his own.

85. Despite the fact that Plaintiff was not resisting and was complying with the marshals as they pulled him away, nevertheless, the marshals continued to grasp tightly onto to Plaintiff's arms and exert pressure to his arms, shoulder, and back, a marshal on each side, each tightly grasping one of Plaintiff's arms, and a third marshal trailing behind, bringing up the rear.

86. The farther the marshals were from the camera, the more physical they became with Plaintiff.

87. They escorted him out of the Courtroom and into the lobby, still grasping on to his arms and leading him out forcibly, where two more marshals, John Does #4 and #5 joined the procession, and they physically ejected Plaintiff from the building.

88. Plaintiff did not resist as the five marshals physically removed him from the building.

89. Upon information and belief, the marshals exerted physical pressure because they were attempting to arouse resistance from Plaintiff to create a pretext to apply more physical force to Plaintiff.

90. After Plaintiff was ejected from the building, the marshals continued to follow Plaintiff outdoors.

91. Outside the building, Plaintiff stood on the sidewalk surrounding the government building and began speaking with other citizens.

92. The marshals who followed Plaintiff outside ordered Plaintiff to get off of the property.

93. Although Plaintiff wished to stay, Plaintiff believed that if he stayed on the

sidewalk he would be arrested, so he complied with the orders and left the property.

94. Upon information and belief, Commissioner Price had given orders to the marshals regarding Plaintiff in advance of the Meeting, and the marshals were instructed, upon receiving a signal from Defendant Price, to escort Plaintiff from the building and eject him from the property.

95. In the Courtroom after Plaintiff was ejected, Defendant Price said, "attacking us, that is beyond the pale," and Defendant Jenkins said, "Ok. That concludes our public speakers for today."

96. There was no other discussion at the Meeting about the incident.

97. At the Meeting, none of the Commissioners at any time protested or took any action to prevent the actions of Defendant Price.

98. One minute later, one of the Commissioners requested that Defendant Jenkins call for a recess, whereupon Defendant Jenkins called for a recess.

99. Upon information and belief, during the recess, members of the Commissioners' Court discussed the incident amongst themselves, possibly in violation of the Texas Open Meeting Act, Section 551.101.

100. During the Meeting, Plaintiff did not delay or interrupt the proceedings or refuse to obey the orders of the presiding officer or rules of the Commissioners' Court.

101. Plaintiff did not make any personal, impertinent, profane or slanderous remarks, nor did he become boisterous while addressing and/or attending the Meeting.

102. Plaintiff did not demean an individual or organization; he simply read an article published in a magazine and asked for clarification.

103. No Commissioner moved and no vote was held to shorten Plaintiff's time to speak

from 3 minutes to 36 seconds.

104. Pursuant to Dallas County Code Section 74-71, "any person ordered to be removed from a Commissioners' Court meeting under the provisions of this section shall be barred from further attendance of that session of the Commissioners' Court meeting and may be barred from addressing and/or attending any Commissioners' Court meeting for up to a six-month period. Any second violation within a year of the first shall result in a one-year suspension from attendance."

105. Accordingly, because of Defendants' conduct, Plaintiff may be barred from exercising his First Amendment right for up to six-months, and has been put on effective probation for a year.

106. After the meeting, County Commissioner J.J. Koch issued the following statement in a livestream posted on the internet about the Meeting titled "Good Start with resolutions, Bad Ending in Unlawfully Removing Stein":

> "Commissioner Price, I believe unlawfully, had Alex Stein removed. Alex Stein started to read about Judge Jenkins in an article about some of his past bad behavior. The statute that someone can be removed under is basically someone who is profane slanderous or boisterous, and Alex Stein had just started reading this article, he was not raising his voice at that time, there was nothing profane, regarding slander, if it was slanderous…it could have been, in D magazine, because D magazine has been known to cause some slander, but D magazine would have been sued by judge Jenkins if there were untruths in there, the judge did not stop what was going on and, here was the big problem, Commissioner Price directed the marshals to take Stein out, and that is not the legal process. According to the statute, if one of the other members wants that to happen, they have to hold a vote. That is why I was kind of sitting there wondering wait, wait, wait, what's going on here. The presiding officer, Judge Jenkins, could have been the one to say, "hey you get out of here", right, with no vote of the court. If Commissioner Price wanted the speaker to stop and be sent out, he needed to hold a vote, and I was a little bit stunned and trying to figure stuff out, but by then they had already lead Mr. Stein out, but it was done unlawfully, it was absolutely done unlawfully, and we are probably going to face the repercussions of it because we can't hear a little bit of criticism which is crap. Yes, it shouldn't be so over the top during proceedings like this, but he wasn't, and we violated his First Amendment rights. It's going to be a big

problem, and we are going to get in trouble for it."

## CAUSES OF ACTION

### COUNT I
### All Defendants
### United States Constitution
### 42 U.S.C. § 1983: First Amendment
### Freedom of Speech

107.  The foregoing paragraphs are incorporated by reference as if set forth fully herein.

108.  Defendants have deprived and continue to deprive Plaintiff of his right to freedom of speech, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment without using the least restrictive means of achieving a compelling governmental interest.

### COUNT II
### All Defendants
### United States Constitution
### 42 U.S.C. § 1983: Fifth Amendment
### Due Process of Law

109.  The foregoing paragraphs are incorporated by reference as if set forth fully herein.

110.  Defendants have deprived and continue to deprive Plaintiff of his right to due process of law, as secured by the Fifth Amendment to the United States Constitution, by impermissibly depriving Plaintiff of his freedom of speech without providing Plaintiff with due process.

### COUNT III
### All Defendants
### United States Constitution
### 42 U.S.C. § 1983: Fourteenth Amendment
### Equal Protection

111.  The foregoing paragraphs are incorporated by reference as if set forth fully herein.

112.  Defendants have deprived and continue to deprive Plaintiff of his right to equal

protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution, by impermissibly treating Plaintiff in a different manner as others in similar conditions and circumstances.

### COUNT IV
### Defendants Dallas County and John Does #1 - #5
### 42 U.S.C. § 1983: Fourth Amendment
### Excessive Use of Force

113. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

114. Defendants Dallas County and John Does #1 - #5 deprived Plaintiff of his right to protection against excessive force by law enforcement as secured by the Fourth Amendment to the United States Constitution, by applying force to Plaintiff that was excessive and unreasonable given the context and circumstances under which the force was applied.

### COUNT V
### Defendants Dallas County, Clay Jenkins, and John Wiley Price
### Tex. Gov't Code § 551.001 *et seq*.
### Texas Open Meetings Act

115. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

116. Defendants violated the Texas Open Meetings Act by not allowing Plaintiff to address the body at the Meeting and for prohibiting a member of the public from lawfully criticizing a member of the governmental body. Section 551.007(b) and (e).

### PRAYER FOR RELIEF

A. An order declaring Defendants' conduct to be unlawful and unconstitutional;

B. An order enjoining Defendants from continuing to engage in conduct found to be unconstitutional;

C. An order requiring Defendants to allow Plaintiff three uninterrupted minutes at a Commissioners' Court meeting to exercise his free speech;

D. An order awarding Plaintiff's damages suffered as a consequence of Defendants' violation

      of Plaintiff's constitutional rights;

E. An order awarding Plaintiff's damages for the violation of Plaintiff's constitutional rights;

F. Any other relief, including attorneys' fees, the Court judges to be proper, and/or is permitted under FRCP 54(c), 42 U.S.C 1988, and. Tex. Gov't Code § 551.142.

## **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues so triable.

DATED this 9th day of June 2022

Respectfully submitted,

/s/**Jonathan Gross**
Jonathan Gross, *Pro Hac Vice pending*
The Clevenger Firm
2833 Smith Ave.
Suite 331
Baltimore, MD 21209
443-813-0141
jon@clevengerfirm.com

Lead Counsel

John Nation
State Bar No. 14819700
5931 Greenville Avenue
Suite 1095
Dallas, Texas 75206
305-833-5319
nationlawfirm@gmail.com

Local Counsel