IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXANDER STEIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:22-CV-1255-D |
| § | |
| DALLAS COUNTY, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Alexander Stein ("Stein") brings this action under 42 U.S.C. § 1983 and Texas law, alleging that he was forcibly prevented from completing his intended remarks during a public comment session of a meeting of the Dallas County Commissioners Court and was filmed at a wide camera angle rather than close up. Stein sues defendants County of Dallas ("Dallas County" or the "County"), County Commissioner John Wiley Price ("Commissioner Price"), County Judge Clay Jenkins ("Judge Jenkins"), and Marshals Robert De Los Santos, Zack Marsi, and Charles Johnson (collectively, the "Marshals").[1]  In two motions,[2] defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss Stein's claim under §

---

[1] Stein alleges that these defendants are "fire" marshals. *E.g.*, 1st Am. Compl. ¶ 10. This allegation may be incorrect: the Dallas County Marshals Service provides protection for Dallas County buildings, facilities, and property and the employees and citizens who work in, or visit, them. The service does not consist of "fire" marshals as such. But the court will accept this allegation as true, as it must, for purposes of deciding the instant motions to dismiss.

[2] On November 29, 2022 Dallas County, Judge Jenkins, and Commissioner Price moved to dismiss. On January 19, 2023 the Marshals moved to dismiss. The two motions

1983 that defendants violated his Fourteenth Amendment right to equal protection of the laws, contending that he has failed to state a claim on which relief can be granted. For the reasons explained below, the court grants the motions.

I

This lawsuit arises out of Stein's appearance at a public meeting of the Dallas County Commissioners Court, the principal governing body for Dallas County.³ Stein, who is also known as "Prime Time #99" and has gained notoriety as a political activist, was one of three members of the public recognized to speak at the meeting, which was live-streamed.⁴ During

---

seek identical relief and rely on substantially the same arguments. Stein's responses to both motions are essentially identical.

³In deciding defendants' Rule 12(b)(6) motions, the court construes the first amended complaint in the light most favorable to Stein, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Stein's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

⁴"'Pleadings' for purposes of a Rule 12(b)(6) motion include attachments to the complaint." *Gomez v. United States*, 2015 WL 3421045, at *3 (N.D. Tex. May 27, 2015) (Fitzwater, J.) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Documents that are "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Video recordings can be "included in the pleadings" such that they are appropriate for the court to consider when deciding a Rule 12(b)(6) motion to dismiss. *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1163 (5th Cir. 2021) (approving district court's decision to consider dashcam and bodycam video footage available on YouTube where link to the video was included in the pleadings). In such cases, "the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Id.* (alteration in original) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

In their motions to dismiss, defendants urge the court to consider the video recording of the Commissioners Court meeting. And Stein included the link to the video in his first amended complaint. Pursuant to the foregoing legal principles, the court has viewed the

his presentation time, Stein intended to ask Judge Jenkins for "clarification" regarding a *D Magazine* article accusing Judge Jenkins of committing several crimes while in college. 1st Am. Compl. (ECF No. 27) ¶ 73. The two individuals who preceded Stein as speakers were given the customary three minutes to make their presentations. But when Stein attempted to speak, Commissioner Price cut him off after less than one minute. Asserting that Stein's chosen topic—verbally attacking a member of the court—was inappropriate, Commissioner Price ordered Stein to cease his presentation and had Stein removed by the Marshals, who were providing security for the meeting.

Stein alleges that he was treated differently from the other two speakers in the following three ways: First, he was only allowed to speak for about 30 seconds, while the other speakers were given the full three minutes allotted in the County Code. Second, his presentation was live-streamed using a less-favorable wide camera angle, rather than a close-up view of his face. And, third, the Marshals stood in different positions while Stein was making his presentation, as if they had been ordered in advance to treat him as a security threat.

Stein now brings this lawsuit, alleging that defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights. He also alleges that Dallas County, Judge Jenkins, and Commissioner Price violated the Texas Open Meetings Act, Tex. Gov't Code § 551.001 *et*

---

video, DCVideo, *Commissioners Court - May 17 2022 (Part 1)*, YouTube (May 17, 2022), https://www.youtube.com/watch?v=zYKUrYXoSSU, and relies in part on its contents to decide the instant motions to dismiss.

*seq*.  Defendants move to dismiss Stein's Fourteenth Amendment equal protection claim, which is asserted in Count III of Stein's five-count first amended complaint.  The court is deciding their motions on the briefs, without oral argument.

## II

To survive defendants' Rule 12(b)(6) motions to dismiss, Stein must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Rule 8(a)(2)) (second alteration in original).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

## III

To state a claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 165 (5th Cir. 2017) (internal quotation marks and

citation omitted). To state a claim under the Fourteenth Amendment Equal Protection Clause, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (internal quotation marks omitted). "[The Supreme Court has] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (first citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923); and then citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989)). But "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (internal quotation marks omitted).

So long as "there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a primary* factor in reaching a decision or that it was not actually relied upon by the decision-makers or that some other nonsuspect irrational factors may have been considered." *Reid v. Rolling Fork Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (emphases in original). "[T]he burden is on the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993)).

"To determine whether persons or groups are similarly-situated, [courts] inquire as to whether they 'are in all relevant respects alike.'" *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). This analysis is "case-specific," *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 234 (5th Cir. 2012), and requires courts to "consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant when making the classification." *Golden Glow Tanning Salon, Inc. v. City of Columbus, Miss.*, 52 F.4th 974, 978 (5th Cir. 2022) (internal quotation marks omitted) (quoting *Stratta v. Roe*, 961 F.3d 340, 360 (5th Cir. 2020)). In cases involving the application of local rules or ordinances, "the plaintiff's and comparators' relationships with the ordinance at issue will generally be a relevant characteristic for purposes of the similarly-situated analysis." *Lindquist*, 669 F.3d at 234.

## IV

The court turns first to the question whether Stein has pleaded a plausible Fourteenth Amendment equal protection claim based on Commissioner Price's cutting his presentation short.

### A

Stein alleges that he was "intentionally treated differently" from the other two speakers at the meeting, who were "similarly situated." *See Vill. of Willowbrook*, 528 U.S. at 564. Defendants contend that the nature of Stein's presentation rendered him meaningfully different from the other two speakers. Defendants also posit that, even if the other two speakers were similarly situated, they neither received favorable camera angles nor

were they treated differently by the Marshals who provided security.

B

The Dallas County Code contains provisions that govern the operations of the Commissioners Court, including court meeting procedures. *See* Dall. Cnty. Code § 74-71. These rules prohibit citizens who are presenting at a meeting from engaging in "the demeaning of an individual or organization." Dall. Cnty. Code §74-71(d)(3). And "failure to comply with this requirement shall subject the speaker to forfeiture of his remaining time before the court." *Id.* Stein's purported violation of this county rule both differentiates him from the other two speakers at the meeting and provides a rational basis on which Commissioner Price's decision to cut Stein's presentation short was based. *See Lindquist*, 669 F.3d at 235, 237. Stein's relationship to the Code provision in question—i.e., as an individual who allegedly violated it—is wholly different from the relationship between the other two speakers and the Code provision. *See id.* at 234. Despite Stein's contrary allegations in his first amended complaint in general and count III in particular, he and the other speakers are not "in all relevant respects alike," *Hegar*, 10 F.4th at 513, and therefore are not similarly situated. Stein's violation of the County Code also provided a rational basis for Commissioner Price's actions; indeed, the County Code itself dictates that members of the Commissioners Court may act as Commissioner Price did when speakers violate the provision that Stein allegedly violated. *See* Dall. Cnty. Code § 74-71(d)(3). The fact that Stein's presentation topic arguably violated the procedures outlined in the County Code therefore defeats Stein's equal protection claim insofar as it is founded on his shortened

presentation time.[5]

Stein contends that the question whether the content of his presentation violated the relevant County Code section is one of fact to be decided by the jury. But even if it is, the act of cutting off Stein's presentation despite its alleged content would not violate the County Code and would at most establish a violation of local law, not a federal-law equal protection violation. *See Lindquist*, 669 F.3d at 235 n.25; *see also Snowden v. Hughes*, 321 U.S. 1, 8 (1944) ("[W]here the official action purports to be in conformity to [a] statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws.").

For these reasons, Stein has not pleaded a plausible Fourteenth Amendment equal protection claim based on Commissioner Price's cutting off his presentation.

V

Stein has likewise failed to plausibly plead that he was treated differently from similarly-situated individuals with respect to the camera angles used during his presentation. Even assuming *arguendo* that the other two speakers were similarly situated to Stein, the court's review of the video of the meeting shows that the entirety of the presentation given by the speaker who preceded Stein was broadcast using the same wide-angle, split-screen view as Stein's presentation. DCVideo, *Commissioners Court - May 17 2022 (Part 1)*, YouTube (May 17, 2022), https://www.youtube.com/watch?v=zYKUrYXoSSU (hereinafter

---

[5]The court is addressing an alleged equal protection violation only, and not an alleged violation of another provision of the United States Constitution or of state law.

"DCVideo"). The first speaker was shown using a different camera for most of his presentation; if anything, it is this speaker who was treated differently. Stein has therefore failed to plausibly plead that he was singled out with respect to the camera angles used during his presentation. In other words, the state action "does not appear to classify or distinguish between two or more relevant persons or groups" in any meaningful way and thus "does not deny [Stein] equal protection of the laws." *Johnson*, 110 F.3d at 306.

## VI

Stein has also failed to plausibly plead that he was treated in an appreciably different manner by the Marshals who provided security at the meeting. And even if he has, the record reflects a rational basis for the different treatment.

The DCVideo shows that the Marshals moved toward the lectern to direct from the room the speaker who preceded Stein because she had failed to yield the floor when her presentation time expired. While the Marshals were still in the process of guiding that speaker away, Stein approached the lectern and began his presentation. During the short time that Stein was allowed to speak, the Marshals were still actively re-positioning themselves. The Marshals were not ultimately located significantly closer to Stein than they had been to the other two speakers. The security guards did not treat Stein with any perceptible hostility until they were essentially directed to do so by Commissioner Price. And even if they did, they had a logical reason for doing so: because they were still in the process of reacting to the prior speaker's behavior and were attempting to maintain control over the meeting. Stein has therefore failed to plausibly plead that he was irrationally treated differently by the

Marshals.

VII

To rectify his inability to plead a "class of one," Stein recasts his equal protection claim as based on a theory of "selective enforcement" of the County Code.[6] This argument also fails.

"[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Instead, "to successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000). Although the Fifth Circuit has never explicitly held that personal vindictiveness is one such "improper consideration," *id.*, it has noted that several factors "suggest that personal vindictiveness by itself is insufficient as an improper motive in the absence of some other class- or group-based discrimination." *Beeler v. Rounsavall*, 328 F.3d 813, 818 (5th Cir. 2003) (internal quotation marks omitted).

Stein does not allege that the Commissioners Court acted on the basis of an improper motive. At most, the first amended complaint plausibly pleads that the Commissioners Court's actions were motivated by a personal dislike for Stein. But that alone is insufficient

---

[6]"The selective enforcement claim exists as a category under the broad umbrella of the 'class of one' claims." *Mikeska v. City of Galveston*, 451 F.3d 376, 376 n.4 (5th Cir. 2006).

to state a plausible equal protection claim. *See Beeler*, 328 F.3d at 818.

Moreover, even if these allegations of personal animus were sufficient, a plaintiff asserting a selective enforcement claim must still identify and draw comparisons to similarly-situated individuals. *See Zeigler v. Jackson*, 638 F.3d 776, 779 (5th Cir. Unit B Mar. 1981); *Williams v. Riley*, 275 Fed. Appx. 385, 390 (5th Cir. 2008) (per curiam). As noted above, the fact that Stein violated county rules renders him dissimilar to the other speakers at the meeting. Stein has therefore failed to plead a plausible claim of selective enforcement.

\* \* \*

For the foregoing reasons, the court grants defendants' motions to dismiss and dismisses count III of Stein's first amended complaint.

**SO ORDERED**.

March 29, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE