IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALEXANDER STEIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:22-CV-1255-D |
| § | |
| DALLAS COUNTY, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Alexander Stein ("Stein") brings this action under 42 U.S.C. § 1983 and Texas law, alleging that he was forcibly prevented from completing his intended remarks during a public comment session of a meeting of the Dallas County Commissioners Court and was filmed at a wide camera angle rather than close up. Stein sues defendants County of Dallas (the "County"), County Commissioner John Wiley Price ("Commissioner Price"), County Judge Clay Jenkins ("Judge Jenkins"), and Marshals Robert De Los Santos, Zack Masri,[1] and Charles Johnson (collectively, the "Marshals"). Stein moves for summary judgment on his claims against Commissioner Price. For the reasons explained, the court denies the motion.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order, *see Stein v. Dallas County*, 2023 WL 2700720, at *1 (N.D. Tex. Mar. 29,

___

[1]Stein incorrectly named Zack Masri in his complaint and the instant motion.

2023) (Fitzwater, J.), and need not be repeated at length for purposes of deciding Stein's motion for partial summary judgment.

In Stein's second amended complaint ("SAC"), which is the operative pleading, Stein alleges that Commissioner Price violated Stein's First (count 1) and Fourteenth (count 2) Amendment rights (remediable under § 1983), and the Texas Open Meetings Act, Tex. Gov't Code Ann. § 551.001 *et seq.* (count 5). Stein moves for partial summary judgment on these counts. Commissioner Price opposes Stein's motion. The court has heard oral argument.

II

When, as here, the summary judgment movant will have the burden of proof on a claim or defense, he "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Stein contends that he is entitled to summary judgment on his First Amendment claim against Commissioner Price.[2]

A

1

Section 1983 does not create substantive rights, *see Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979), but provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law, *see Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Thus to state a claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 165 (5th Cir. 2017) (internal quotation marks and citation omitted).

The parties do not dispute that Commissioner Price was acting under color of state law; the court need only consider whether Stein has established beyond peradventure that Commissioner Price deprived him of his constitutional right to free speech.

---

[2]Because the court's conclusion would be the same regardless of the admissibility of Commissioner Koch's statements and Justice Brett Kavanaugh's confirmation hearing, the court need not address the merits of Commissioner Price's evidentiary objections. *See Ford v. Anderson County*, 102 F.4th 292, 324 (5th Cir. 2024) (per curiam) (citing cases where court declined to determine whether certain evidence was hearsay because the contested statement did not affect the court's outcome).

2

The First Amendment Free Speech Clause provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend I. But "the government need not permit all forms of speech on property that it owns and controls." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020) (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992)). It is well-settled that "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46 (1983) (citation omitted). Accordingly, a speaker's right to access the property depends on the character of the property and the forum at issue. *See id.* at 44.

Claims under the First Amendment Free Speech Clause are typically analyzed in three steps. First, the court must "decide whether [the activity at issue] is speech protected by the First Amendment[.]" *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). Second, assuming the activity "is protected speech, [the court] must identify the nature of the forum, because the extent to which the government may limit access depends on whether the forum is public or nonpublic." *Id.* And, third, the court must assess whether the government's justifications for restricting speech in the relevant forum "satisfy the requisite standard." *Id.* The parties do not dispute that Stein's speech is protected by the First Amendment or that the Dallas County Commissioners Court meeting was a limited public forum. *See Wenthold v. City of Farmers Branch*, 2012 WL 467325, at *7-8 (N.D. Tex. Feb. 14, 2012) (Boyle, J.). Accordingly, the remaining question is whether

Commissioner Price's justification for restricting Stein's speech in the limited public forum satisfies the requisite standard.

"In limited public for[a], the government may impose reasonable, viewpoint-neutral restrictions on speech." *Ream v. City of Heath*, 2015 WL 4393307, at *3 (N.D. Tex. July 16, 2015) (Boyle, J.) (first citing *Christian Legal Soc'y Ch. of the Univ. of Cal., Hastings Coll. of L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010); then citing *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 346 (5th Cir. 2001)). For example, the government "may restrict speakers to the subject at hand, impose time limits on speakers, and prevent disruptions of the meeting." *Heaney v. Roberts*, 147 F.Supp.3d 600, 605 (E.D. La. 2015) (citing *Wenthold*, 2012 WL 467325, at *8), *aff'd in part, dism'd in part*, 846 F.3d 795. "The government cannot under any circumstances, however, restrict speech based on viewpoint, and even viewpoint-neutral restrictions must be reasonable in light of the forum's purpose." *Id.* (citing *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010)); *see also Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others[.]" (citation omitted)). Whether a restriction on speech is viewpoint-based is determined by the facts of each case. *See Heaney*, 147 F.Supp.3d at 605 (citation omitted).

3

Commissioner Price maintains that he is entitled to qualified immunity on Stein's First Amendment claim under § 1983 because he was acting in his official capacity as a Commissioner for the County during the meeting at issue. Therefore, to obtain summary

judgment, Stein must also establish beyond peradventure that Commissioner Price is not entitled to qualified immunity.

To decide whether Commissioner Price is entitled to qualified immunity, the court performs a two-pronged analysis. *See Mitchell v. Mills*, 895 F.3d 365, 369 (5th Cir. 2018). The court begins with the question "whether, taken in the light most favorable to plaintiff as the party asserting the injuries, the facts they have alleged show that [the defendant's] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." (internal quotation marks and citations omitted)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances

-6-

would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 284 (5th Cir. 2002) (emphasis in original) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)).

Clearly established rights must not be defined at a high level of generality. *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam). "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right." *Anderson*, 483 U.S. at 639. But because defining clearly established rights so broadly would "destroy" the balance struck by the qualified immunity doctrine, rights must instead be defined in a "more particularized" sense. *Id.* at 639-40. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199 (quoting *Saucier*, 533 U.S. at 202). Although this does "not require a case directly on point," it does command that the plaintiff show that "the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).

B

With these principles in mind, the court considers whether Stein has established beyond peradventure that Commissioner Price is not entitled to qualified immunity regarding his First Amendment claim under § 1983.

-7-

1

The court first considers whether Stein has established beyond peradventure that Commissioner Price violated Stein's First Amendment right. In particular, the court decides whether Stein has established beyond peradventure that Commissioner Price's removal of Stein constituted viewpoint discrimination.

There remains at least a disputed factual question regarding whether Commissioner Price censored Stein because he spoke on an impermissible topic.[3] Stein's public comments include:

> In college at Baylor, Jenkins continued to distinguish himself dubiously. He was arrested twice, once for reckless driving after he led Baylor security and Waco police on a car chase he'd planned and a second time for criminal trespassing in a women's dorm during a panty raid. Strangely enough, he was never arrested for his role as the famous Baylor Pie Man, a hit man for a student-organized ring that offered to throw pies in people's faces—professors,[4]

The Dallas County Code Chapter 74, Division 3, § 74-71(f) states:

> Any person making personal, impertinent, profane or slanderous remarks or who becomes boisterous while addressing and/or attending the commissioners court meeting shall be removed

---

[3] Because there is a question of material fact regarding whether Commissioner Price's removal of Stein was viewpoint discriminatory, the court need not decide whether it was unreasonable in light of the purposes served by the forum. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001).

[4] Commissioner Price cut Stein off before he finished reading the paragraph. *See* Peter Simek, *Who Is Clay Jenkins?*, D MAGAZINE (Sept. 23, 2014, 12:00 AM), https://www.dmagazine.com/publications/d-magazine/2014/october/who-is-dallas-county-judge-clay-jenkins/.

>from the commissioners' courtroom if security is so directed by the presiding officer. If the presiding officer fails to act, any member of the commissioners court may move to require enforcement of the rules, and the affirmative vote of a majority of the commissioners court shall require the presiding officer to act.

Stein asserts that Commissioner Price did not remove him because he spoke on an impermissible topic, such as a "personal," "impertinent," "profane," or "slanderous" matter. Commissioner Price, in his own words, removed Stein because Stein had "admonished" or "attacked" Judge Jenkins.[5] Stein maintains that, by taking issue with the substance of his speech, *i.e.*, "admonishing members of the Commissioner's Court," Commissioner Price discriminated against his viewpoint. Stein analogizes *Matal v. Tam*, 582 U.S. 218 (2017), which held that the Patent and Trademark Office's provision that prohibited trademarks that may "disparage . . . or bring . . . into contemp[t] or disrepute" any "persons, living or dead," 15 U.S.C. § 1052(a), was unconstitutional under the First Amendment because it prohibited speech on the ground that it expressed an idea that offends. *See id.* at 223. Stein asserts that his remarks implying that Judge Jenkins was unfit to serve as County Judge because of his prior acts expressed offense and thus constituted a legitimate viewpoint.

Commissioner Price responds that a fact question exists regarding whether he

---

[5]It appears that Stein asserts in the alternative that, if his remarks fall within the scope of § 74-71(f) insofar as they are "personal" or "impertinent," then § 74-71(f) is unconstitutional because it "would prevent all criticism of Government officials in public meetings[.]" P. Br. (ECF No. 65) at 12. But as Commissioner Price points out, Stein's SAC does not state a claim that § 74-71(f) is unconstitutional as applied to him. The court therefore does not address this assertion.

discriminated against Stein based on viewpoint because a reasonable jury could find that Stein's remarks about Judge Jenkins were "personal." The remarks were "directed at Judge Jenkins'[] personal life," and consisted of "allegations that Judge Jenkins engaged in private misconduct whilst in college, long before becoming a public figure." Additionally, a reasonable jury could find that Stein's remarks were slanderous because the remarks "suggest that Judge Jenkins was a felony offender who was never charged."

Another circuit court observed that "drawing a precise line of demarcation between content discrimination, which is permissible in a non-public forum, and viewpoint discrimination, which traditionally has been prohibited even in non-public fora, is, to say the least, a problematic endeavor." *Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 630 (2d Cir. 2005) (emphasis omitted). The Supreme Court also acknowledged that "it can be difficult to discern what amounts to a subject matter unto itself, and what, by contrast, is best characterized as a *standpoint* from which a subject matter is approached." *Id.* (emphasis in original) (first citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 831 (1995); then citing *Good News Club*, 533 U.S. at 107-08, 131-33). Based on these observations, the circuit court vacated a lower court's decision to grant summary judgment because factual questions remained regarding whether the speech offered a viewpoint, and whether, if it depicted another viewpoint that was equally outside the scope of permissible subject matter, it would similarly have been censored. *See id.* at 631. The same fact questions remain here.

Stein does not establish beyond peradventure that Commissioner Price silenced and

ejected him from the meeting because of an improper motive or intent.[6] *See Heaney*, 846 F.3d at 802. Stein primarily relies on *Matal*, which emphasizes that "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers," and states that "[g]iving offense is a viewpoint." *Matal*, 582 U.S. at 243-44; *see also Rosenberger*, 515 U.S. at 829 ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). Yet Stein does not present evidence establishing beyond peradventure that Commissioner Price silenced him because his remarks were offensive.

Stein points to Commissioner Price's statement at the meeting that he removed Stein because he had "admonished" or "attacked" Judge Jenkins. Although the jury could reasonably infer, based on Stein's remarks, that Commissioner Price silenced Stein and removed him from the meeting because his remarks offended Judge Jenkins' character rather than touched on his private affairs, the court must view the facts in the light most favorable to Commissioner Price and draw all reasonable inferences in his favor at the summary judgment stage. The jury could also reasonably infer that Commissioner Price was enforcing

---

[6]The Fifth Circuit acknowledges that, generally, an official's subjective intent is irrelevant under qualified immunity; however, the official's motive may be a necessary element under different federal-law claims. *See Heaney*, 846 F.3d at 802 n.3. When, as here, the plaintiff asserts a First Amendment claim based on viewpoint discrimination, it is appropriate to consider the official's motive. *See id.*

a content-based restriction.[7]  Although Commissioner Price stated that he removed Stein because he had "admonished" or "attacked" Judge Jenkins, neither justification clearly establishes a motive or intent to remove him because his remarks were "offensive" rather than "personal" or "impertinent." Commissioner Price's motivation becomes more uncertain considering Stein's remarks were not about him.

Stein also points to Commissioner Price's admissions as proof of motive or intent. Stein urges that the court to consider only evidence that Commissioner Price admitted that Stein was not boisterous or disruptive while reading the *D Magazine* article aloud.  But it does not follow that Commissioner Price must have acted based on an improper motive. Commissioner Price also admits that he "believed that [Stein's] remarks . . . were impermissible under the rules established for remarks in a limited public forum." P. App. (ECF No. 66) at 5.  Thus Stein could have been removed because he spoke on an impermissible topic, such as a "personal," "impertinent," "profane," or "slanderous" matter. *Cf. Freedom From Religion Found., Inc. v. Abbott*, 2017 WL 4582804, at *5-6 (W.D. Tex. Oct. 13, 2017) (concluding that government officials discriminated against speaker based on viewpoint when they stated they removed the exhibit because of its offensive tone). Commissioner Price's motivation will turn on his credibility in explaining his reasons for his

---

[7]As the district court noted in *Heaney*, although there are no ostensible factual disputes regarding Commissioner Price's conduct pertaining to Stein's claims because the court has a video of the meeting, "the video evidence merely presents a scenario from which a trier of fact may or may not conclude that improper motive played a role in [Commissioner Price's] actions." *Heaney*, 147 F.Supp.3d at 609.

actions.

Stein has also failed to establish beyond peradventure that Commissioner Price was not enforcing a reasonable topic restriction. The two individuals who spoke prior to Stein were allowed to use the entire three minutes allotted to them and not removed from the meeting. One possible interpretation of these facts is that, from Commissioner Price's perspective, the two individuals spoke on approved topics. The first speaker spoke on the state of education in South Dallas, and the second speaker spoke about her recent political campaign, her feelings regarding her opponent, and the Commissioners Court's priorities. The second speaker did not name any member of the court or otherwise discuss any member's college days. Commissioner Price could have viewed Stein's topic as impermissible because, unlike the other two speakers, Stein's topic was "personal" or "impertinent" because it targeted an individual member of the court and discussed his decades-old college activities. Stein does not present any evidence that Commissioner Price allowed others to praise the judges regarding similar activities or to depict a viewpoint on an equally impermissible topic under § 74-71(f).

Because a factual dispute exists regarding whether Commissioner Price violated Stein's constitutional rights, Stein has not satisfied his burden to establish beyond peradventure that Commissioner Price is not entitled to qualified immunity.

Accordingly, the court denies Stein's motion for summary judgment on his First

Amendment claim.[8]

IV

The court now considers Stein's contention that he is entitled to summary judgment on his Fourteenth Amendment procedural due process claim.

A

"The Fourteenth Amendment's right to procedural due process guarantees citizens the protection of adequate procedures before allowing a state to deprive them of their property, liberty, or life." *Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A procedural due process claim requires a "familiar two-part inquiry" to determine "whether [the plaintiff] was deprived of a protected interest, and if so, what process was [the plaintiff] due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). "Liberty interests protected by the Fourteenth Amendment 'may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.'" *Jordan*, 823 F.3d at 810 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted)). "The Supreme Court recognizes a narrow category of state-created liberty interests[.]" *Id.* (citing *Sandin*

---

[8]The court notes, however, that the Marshals are likely entitled to qualified immunity as to Stein's First, Fourth, and Fourteenth Amendment claims under § 1983. In the Fifth Circuit, it is clear that a sergeant-at-arms may reasonably believe that he has legal authority to keep the peace at meetings and in the building. *See Heaney*, 846 F.3d at 804-05. He may respond to the request and escort an individual out of the room or briefly detain him while consulting with a supervisor. *See id.* at 805. The sergeant-at-arms is not required to cross-examine or second-guess the government official regarding his motives for acting. *See id.* at 804 (citing *Collinson v. Gott*, 895 F.2d 994, 997 (4th Cir. 1990)).

-14-

*v. Conner*, 515 U.S. 472, 483-84 (1995)).

B

The court considers first whether Stein has established beyond peradventure that Commissioner Price violated Stein's Fourteenth Amendment constitutional right; in particular, whether Commissioner Price deprived Stein of a protected interest.

Stein asserts that the has "a protected interest in his right to address the Commissioners Court for a full three minutes," which "derives from the First Amendment [], the Texas Open Meetings Act, the Dallas County Code and the mutual understanding of speakers and officials in the Dallas County Commissioners Court." P. Br. (ECF No. 65) at 14. The Supreme Court has defined the concept of liberty under the Fourteenth Amendment, *see Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972), to include the right to free speech, *see Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000); *see also Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). But the right remains subject to reasonable government regulation. *See Cornelius*, 473 U.S. at 808 ("The Government's decision to restrict access to a nonpublic forum need only be *reasonable*[.]"); *see also Vaher v. Town of Orangetown*, 916 F.Supp.2d 404, 432-33 (S.D.N.Y. 2013) (holding that the Fourteenth Amendment protects "right to free speech" as a liberty interest but that free speech "remains subject to reasonable government regulation) (citing *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 707-08 (1931)). And, as explained above, Stein has not established beyond peradventure that Commissioner Price violated his right to free speech in a limited public forum. Consequently, Stein has not proved beyond peradventure that Commissioner Price

violated his due process rights arising out of his alleged deprivation of his right to free speech. Thus Stein has not overcome his burden to establish beyond peradventure that Commissioner Price is not entitled to qualified immunity.[9]

Accordingly, the court denies summary judgment as to Stein's Fourteenth Amendment claim under § 1983.

V

The court now turns to Stein's contention that he is entitled to summary judgment on his TOMA claim against Commissioner Price.

A

Stein asserts that Commissioner Price violated the TOMA when he ordered Stein removed from the public meeting, because "[a] governmental body may not prohibit public criticism of the governmental body[.]" Tex. Gov't Code Ann. § 551.007(e). Commissioner Price responds that the subsection does not apply to Stein's comments, because he did not

---

[9]Stein's argument that Commissioner Price violated his due process rights to the extent that he did not follow the internal procedure established in Dallas County Code, § 74-71(f), is inapposite. *See* P. Br. (ECF No. 65) at 15 ("The procedures set forth in Dallas County Code § 74-71(d) were not followed and, accordingly, Stein was not afforded procedural due process."). "There is not a violation of due process every time a . . . government entity violates its own rules. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." *Levitt v. Univ. of Tex.*, 759 F.2d 1224, 1230 (5th Cir. 1985) (citing *Garrett v. Mathews*, 625 F.2d 658, 660 (5th Cir. 1980)). To hold otherwise would "improperly bootstrap state law into the Constitution." *Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052, 1056 (5th Cir. 1985) (en banc); *Lindquist v. City of Pasadena*, 669 F.3d 225, 235 (5th Cir. 2012) (same). Stein must establish that Commissioner Price's conduct trespassed on *federal* constitutional safeguards, which he does not do here. *See MC Trilogy Tex., LLC v. City of Heath*, 662 F.Supp.3d 690, 697-98 (N.D. Tex. 2023) (Fitzwater, J.).

desire to address the court regarding an item on an agenda for an open meeting and because he was not addressing the court before or during its consideration of the item. *See* Tex. Gov't Code Ann. § 551.007(b). Stein replies that Commissioner Price lacks authority to support his contention that the statute was only intended to protect public testimony regarding an item on an agenda for an open meeting.

B

The TOMA requires only that meetings be "open to the public." *See* Tex. Gov't Code Ann. § 551.002 ("Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by [Chapter 551]."). It does not provide a general right for the public to speak at open meetings. The plain language states as much; it only requires governmental bodies to allow public testimony regarding items placed on the meeting agenda. *See* Tex. Govt' Code Ann. § 551.007(b). And Texas courts have held that the requirement that meetings be open to the public does not mean that persons other than members of the governmental body are free to speak. *See Stevens v. Texas*, 2022 WL 17687416, at *5 (Tex. App. Dec. 15, 2022, no pet.); *Charlestown Homeowners Ass'n, Inc. v. LaCoke*, 507 S.W.2d 876, 883 (Tex. App. 1974, writ ref'd). Stein has not presented contrary authority. Stein only cites the subsection and states that it applies to his speech because his comments were not "otherwise prohibited by law." P. Br. (ECF No. 65) at 17. Because Stein has not established that he has a TOMA right, he has not satisfied his burden of establishing beyond peradventure that Commissioner Price violated that right. Accordingly, the court denies Stein's motion regarding his TOMA claim.

* * *

For the reasons explained, the court denies Stein's motion for partial summary judgment.

**SO ORDERED**.

June 11, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE